PEOPLE ex rel. BARTH v. BOARD OF CANVASSERS OF TOWN OF BUSTI et al.

(Supreme Court, Special Term, Chautauqua County.   July, 1900.)

1. MANDAMUS—CORPORATIONS—STOCKHOLDER'S RIGHTS.

A stockholder in a hotel corporation, who operates hotels as agent for the corporation, cannot maintain an application for a writ of peremptory mandamus in his individual name, and without making the corporation a party to the proceedings, requiring the boards of inspectors and canvassers of a town to reconvene, and reject all votes cast in such town on the four excise propositions declared by Liquor Tax Law, § 16, one of which involved the question whether hotels in such town should be licensed, though it is stated in the application that the corporation authorized him to make it.

2. SAME—RIGHT TO OTHER REMEDY.

Where the four local option questions declared by the liquor tax law have not been properly submitted at a town meeting, a hotel keeper, who has been refused license, may maintain proceedings for a writ of peremptory mandamus, requiring the boards of inspectors and boards of canvassers of such town to reconvene, and reject all votes cast in the town on such local option questions, notwithstanding the liquor tax law provides that if, for any reason, the four local option questions shall not have been properly submitted at a town meeting, such questions shall thereafter be submitted to the voters at a special town meeting to be called on a petition signed and acknowledged by at least 10 per centum of the electors of the town, etc.; since the above provisions do not give a remedy within the rule that mandamus will not issue where another remedy exists.

3. SAME—TOWN BOARDS—CHANGE IN PERSONNEL.

Where the personnel of the boards of inspectors and canvassers of a town, against whom a proceeding for writ of peremptory mandamus is instituted by a hotel keeper who has been refused a license on a vote on the four excise propositions declared by the liquor tax law, to compel them to reconvene and reject all votes so cast, is not the same as of those boards which counted, certified, canvassed the vote, and declared the result, the proceeding cannot be maintained, since the new boards cannot be called on to perform duties which were never imposed on them by law; and the old board, not having been continued in office for the purpose of such a proceeding, is functus officio.

4. INTOXICATING LIQUORS—LOCAL OPTION—SUBMISSION OF QUESTIONS—PETITION.

The liquor tax law authorizes the submission of the four local option questions declared in section 16, in case the electors of the town to the

number of 10 per centum of the votes cast at the next preceding general election shall request such submission by a written petition, signed and acknowledged by such electors before a notary public or other person authorized to take acknowledgments or administer oaths, and duly filed with the officer charged with the duty of furnishing ballots for the election. *Held*, that where a petition for such submission, signed by 55 electors of a town, was properly acknowledged by only 17 of the signers, and there was no evidence that such signers constituted 10 per centum of the number of voters in the town who voted at the next preceding general election, such petition was not in compliance with the statute, and all proceedings based thereon were void.

Application by the people, on relation of John C. Barth, against the boards of town canvassers and inspectors of the town of Busti, for writ of peremptory mandamus requiring the above-named boards to reconvene, and reject all votes cast in such town on the subject of local option at the election of November 7, 1899. Application denied.

Wentworth & Wentworth and Norman M. Allen. for the motion.
Frank Stevens, opposed.

WHITE, J. The relator, John C. Barth, is the owner of 125 out of the whole 150 shares of the capital stock of the Lakewood Hotel & Land Company, a domestic corporation that owns two hotels in the said town of Busti. These hotels entertain from 300 to 400 guests during the summer season, many of whom are accustomed to the use of wines and liquors, and who would not patronize the hotels if they were not licensed. The biennial town meeting of the town of Busti was held November 7, 1899, at the same time as the general election in that year. There are two election districts in said town, and at said town meeting the four excise propositions or questions provided for by section 16 of the liquor tax law were voted upon by the electors of said town at said town meeting. The ballot furnished to and used by such electors in voting upon such questions was in form an official ballot under the election law of the state, containing upon its face, not only the four excise or local option questions, but the four questions upon the then proposed four constitutional amendment questions submitted to the voters of the state at said general election. The ballot was furnished by the clerk of the county. No other ballot was used by the electors of the town in voting upon the local option questions. The vote upon the questions (four) whether hotels in said town should be licensed resulted, in favor thereof 113, and against the proposition 228. A few days prior to October 18, 1899, the town clerk of Busti received three several petitions signed, the first, by 22 individuals representing themselves to be duly-qualified voters of said town; the second, by 16; and the third by 17 individuals representing themselves to be duly-qualified voters of said town,—asking that said clerk cause to be procured ballots for the town meeting to be held in said town November 7, 1899, for the purpose of submitting to the voters of said town questions, according to articles 1, 2, 3, and 4 of section 16 of chapter 112 of the Laws of 1896, pertaining to the liquor question. The signing of the first of said petitions was acknowledged by the persons named in and who subscribed it before A. P. Simons, a notary public, on the 25th, 27th, and 30th days of September, 1899.

At the foot of the second of said petitions, which is dated September 26th and 27th, is the following clause:

"We, the above-named legal voters of the town of Busti, did, on the above-named dates, subscribe our names to the above petition for the purpose set forth therein.

"Sworn to before me this 27th day of September, 1899.

"J. P. Alexander, J. P."

A certificate of the acknowledgment of the third of said petitions in due form by the persons signing the same is made by H. N. Brown, a justice of the peace in said town of Busti. On the 18th day of October, 1899, the clerk of Busti filed said petitions with and in the office of the clerk of Chautauqua county. No copies thereof thereafter remained with, or in the office of, the clerk of the town. No notice of any kind was given or posted by the town clerk that such local option questions would be voted upon at the election of November 7, 1899. No separate ballot boxes were provided or used for the reception of the local option ballots. The Lakewood Hotel & Land Company had a license for its said hotels, which expired April 30, 1900. Such license was in the name of Morris Partridge, as the manager of said hotels. It was stated by the counsel for the respondent upon the argument, and not controverted by the counsel for the relator, that the relator keeps and operates said hotels, as the agent or manager of the corporation, and such seems to be a fair inference from Barth's own statement of the facts. The relator's claim and statement in the moving papers is that he, as an individual, is entitled to such license, and that the company has authorized him to make this application. The existence and rights of a township are recognized, and as yet remain zealously guarded, by law. In matters purely local the will of its electors, when lawfully expressed, is supreme. In giving expression thereto, of course, all essential requirements of the law must be observed and complied with.

The first question raised upon the argument of this motion is whether or not a clear, legal right possessed by the relator was infringed or prejudiced by the election in Busti, and the result thereof as declared, assuming such election to have been illegal. This application for a mandamus is made by John C. Barth as an individual. The hotel corporation is not in any way a party to the proceeding. The statement that the hotel company has authorized him to make it in no way affects his status in the proceeding. No facts are stated from which it can be inferred that, as an individual, he would be entitled to a license for the hotels. Upon the argument it was stated by counsel for the respondents, and not controverted by counsel for the relator, that in fact he is keeping and operating the hotels as agent for the corporation, and not otherwise; and such is the only fair inference from the moving papers. Assuming, then, that, but for the adverse vote on the local option questions at the election of 1899, the hotel company would be entitled to a license, and that its right in that regard is infringed and prejudiced by the said vote and its result as declared, it does not follow that, because the relator is a stockholder in the company, he, as an individual, has been injured in such a way as to justify the court in granting the writ asked for. The rights of a cor-

poration in such a case as this to have a writ of mandamus issue, if it exists, cannot be vindicated by a stockholder acting in his own name as an individual, and without making the corporation a party to the proceeding. The case at bar is not within the rule of law which authorizes the proceeding to be prosecuted by any citizen having an interest, as one of the public, in the performance of a duty by a public officer, which act is public in its nature, and ought to be compelled in the interest of the public generally. It seems to be clear, therefore, that no clear legal right of the relator has been violated or affected by the adverse vote in question, even though it were illegal.

The respondents contend that mandamus is not the proper remedy, even though the vote in question of November 7, 1899, was illegal, and the relator shows himself entitled to relief from the result as declared. The claim in that behalf is that another adequate and effectual remedy is given by the liquor tax law itself by the provision therein that if, for any reason, the four local option questions shall not have been properly submitted at a town meeting, such questions shall thereafter be submitted to the voters at a special town meeting to be called upon a petition signed and acknowledged by at least 10 per centum in number of the electors of the town according to the vote cast at the next preceding general election, followed by an order that such special town meeting be held, made by the supreme or county court, or a judge or justice thereof; and the case of People v. Mosso, 30 Misc. Rep. 164, 63 N. Y. Supp. 585, is cited as an authority to that effect. It hardly seems to me that the provision of the liquor tax law above referred to can properly be termed a "remedy" in the sense in which the word is used in its application to the writ of mandamus, when it is said that mandamus will not issue where another remedy exists. Such other remedy must be one available to the injured party without reference to his ability to get his neighbors to join in a petition for its redress. It must be a plain, speedy, adequate, and specific remedy in the ordinary course of the law. Assuming that the relator has a clear, legal right which was violated by the votes and the declared result in question, and that he has a standing in court to prosecute this proceeding, it would seem ridiculous to say that the enforcing of the right must be made to depend upon whether he could get enough of his neighbors to join in a petition and in an application to a judge or court for the special election provided for by the liquor tax law. As a remedy to right a wrong, such a proceeding would not answer the purpose of the law. If the facts justified the relator in invoking any remedy in this proceeding, mandamus would be proper. Section 114 of the election law, which provides, among other things, that mandamus may issue within 20 days after the result of the election is declared, etc., commanding a recount, and the exclusion of certain ballots, and that boards of inspectors and canvassers shall continue in office for the purpose of such proceedings, seems to be applicable solely to proceedings by defeated candidates for office, and therefore not applicable to the proceedings at bar.

The personnel of the boards of inspectors and canvassers who are the respondents in this proceeding is not the same as of those boards which counted, certified to, canvassed the vote, and declared the re-

sult upon the local option questions involved in this proceeding. The functions of those boards, as they were constituted at the time of the election in Busti in 1899, ceased upon the election and qualification of the individuals now composing said boards; and the old boards, not having been continued in office for the purpose of such an application as this, by any statutory provision, are functus officio, and cannot now be called upon to perform a duty which devolved upon them while they were in existence. Nor can the new board be called upon to perform duties which were never imposed upon it by law.

It appears that a large majority of the qualified electors of Busti who voted at the election of 1899—and the presumption is that all of them voted—are opposed to the granting of licenses in that town; that no effort was made to resubmit the local option question pursuant to the provision of the liquor tax law; that in consequence of an amendment to it, passed April 13, 1900, it would now be impossible for the said town to effectually prevent the granting of licenses therein prior to May 1, 1901, by any action on the ground that the electors, or any one of them, was ignorant of the fact that such questions were to be and were being voted upon at the election. Under the circumstances, to nullify the result, if the court has the power to do so, would be inequitable.

Realizing that a court of review may differ from the conclusions to be drawn from what has already been said and may be said concerning one or more of the questions thus far discussed and other propositions involved in this application, it is thought best to consider briefly the legality of the results of the election of 1899 touching local option in Busti. As to the local option questions submitted to and voted upon by the electors of Busti in 1899, it was necessary, by the terms of the town law, that the town officers or other persons entitled to demand a vote thereon should have filed with their town clerk a written application plainly stating the questions they desired to have voted upon, and requesting a vote thereon to be held November 7, 1899, at least 20 days before that day. The town clerk should have given at least 10 days' notice, posted conspicuously in at least four of the most public places in the town, of those proposed questions, and that a vote would be taken upon them at that town meeting. He should have prepared a ballot box, properly labeled, briefly indicating the questions to be voted upon, in which all ballots voted upon those questions should have been deposited. He should have prepared, and have had at that town meeting, a sufficient number of ballots, both for and against those questions, for the use of the electors. The state election law made it the duty of the county clerk, instead of the town clerk, to furnish the ballots for the local option questions; and the liquor tax law so modified or supplemented the town law as to make it incumbent upon the town clerk of Busti to perform the duties above mentioned only in case the electors of the town to the number of 10 per centum of the votes cast at the next preceding general election had, by a written petition, signed and acknowledged by such electors before a notary public or other person authorized to take acknowledgments or administer oaths, and such petition was filed with him 20 days before November 7, 1899, requesting such submission of said

local option questions. It cannot be justly claimed that such a petition as the liquor tax law provides for was signed, acknowledged, or filed with the town clerk. A petition was signed by 55 individuals, who say in their petition that they are electors of said town, 17 of whom acknowledged before a justice of the peace that they executed the petition. As to the other 38, there is nothing that can properly be termed an acknowledgment such as is required to deeds of conveyance to entitle them to be recorded, as required by law. There is no evidence that 55 is 10 per centum of the number of votes cast in the town at the next preceding general election. The petition was filed with the town clerk about October 18, 1899, and removed from his own office to that of the county clerk about the same date. The town clerk gave no notice of any kind concerning the submission of the local option questions. He prepared no ballot, nor any separate box for the reception of those ballots, nor was there any such separate ballot or box provided by any one. The local option propositions as submitted and voted upon were furnished by the county clerk on a ballot official under the general election law in form, which had upon it the four proposed constitutional amendments submitted to the people of the state at said election. There was an utter, and almost total, failure to comply with the law in submitting those local option questions, from start to finish.

It is claimed by counsel for the state excise department, who, by courtesy, took part in the argument on this motion, that the provisions of the statute thus ignored and violated are directory only, and not mandatory; that, an apparently full and fair vote having been had, the result is conclusive as to its legality. I am of the opinion that at least the provisions of the statute requiring the initial step to be taken to secure the submission of the questions to the electors of the town according to the votes cast at the next preceding general election is one of substance, and mandatory, and, the petition in this case not having been in compliance with the statute, all proceedings based upon it would be held irregular and void, if the question had been properly raised in due time. The motion for a writ of mandamus should be denied, with $10 costs to the respondents.

Motion denied, with $10 costs to respondents.